1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

                                  ----oo0oo----

11

12   SILVA MAMIGONIAN,                    CIV. No. 2:13-980 WBS DAD

13              Plaintiff,                MEMORANDUM AND ORDER RE:
                                          PLAINTIFF'S MOTION FOR JUDGMENT
14        v.                              ON THE RECORD AND DEFENDANTS'
                                          MOTION TO DISMISS AND CROSS-
15   MICHAEL BIGGS; TIMOTHY AIKEN;        MOTION FOR SUMMARY JUDGMENT
     SUSAN CURDA; ALEJANDRO
16   AYORKAS; JOHN MORTON; ERIC
     HOLDER, JR.; JANET
17   NAPOLITANO; and the
     DEPARTMENT OF HOMELAND
18   SECURITY,

19              Defendants.

20

                                  ----oo0oo----

21

22        Plaintiff Silva Mamigonian, an Armenian national,

23   brought this action under the Administrative Procedure Act, 5

24   U.S.C. § 704, challenging the decision of the United States

25   Citizenship and Immigration Services ("USCIS") to deny her

26   applications for an adjustment of immigration status.  Presently

27   before the court are plaintiff's motion for judgment on the

28   administrative record pursuant to Federal Rule of Civil Procedure

                                     1

56 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., (Docket No. 39), defendants' renewed motion to dismiss plaintiff's First Amended Petition for lack of jurisdiction and their cross-motion for summary judgment, (Docket No. 47).

I.  Factual and Procedural History

      Plaintiff has resided in the United States since February 3, 2002, when she arrived in Los Angeles from Armenia. (Pl.'s First Am. Pet. ("FAP") at 5 (Docket No. 36).)  On May 28, 2003, plaintiff married a naturalized U.S. citizen, and today the couple remains together and has two U.S. citizen minor children. (Id.)  Plaintiff has no criminal record.  (Id.)

      On October 11, 2005, USCIS approved plaintiff's petition for a relative immigrant visa.  (Id.; Pl.'s Mot. Ex. 14.)  A year later, plaintiff applied for an adjustment of status to that of a lawful permanent resident, but USCIS denied the application on the grounds that when she arrived in the United States, she presented a U.S. passport belonging to another person and thereby misrepresented herself as a citizen for the purpose of gaining entry into the country.  (FAP at 6.)

      An immigration judge ("IJ") held removability hearings, where the government alleged three grounds for plaintiff's removal to Armenia: plaintiff falsely represented herself as a United States citizen, sought to procure entry to the United States by fraud or willful misrepresentation, and was not in possession of a valid unexpired visa or other entry document. (Pl.'s Mot. Ex. 1 at 1.)  At the hearings, plaintiff testified that she did not intentionally present a passport that did not belong to her.  (Id. at 5-7.)  Plaintiff paid a man to help

2

1   navigate her immigration to the United States, believing the high

2   price he charged for the services, in addition to his

3   representations, guaranteed her entry would be legal.  (Id. at

4   5.)   The man gave plaintiff a sealed envelope, which unbeknownst

5   to plaintiff contained a U.S. passport belonging to another

6   person.  (Id.)  When plaintiff opened the envelope at the border

7   to present her documentation to an immigration officer, plaintiff

8   discovered for the first time its contents and immediately

9   indicated the passport was not hers.  (Id. at 6.)

10          Finding "plaintiff credibly and consistently maintained

11   that she was unaware that the passport she provided to the

12   immigration inspector was not her own passport,"[1] the IJ

13   dismissed the charges for falsely claiming citizenship and fraud

14   or material misrepresentation.  (Id. at 11.)   However, the IJ

15   sustained the third charge, ordering plaintiff removed to Armenia

16   for being present in the United States without a valid visa.

17   (Id.)[2]

18          Plaintiff made several more unsuccessful attempts to

19   apply for an adjustment and to reopen the removal proceedings.

20   (FAP at 6.)  On December 28, 2010, USCIS denied plaintiff's

21          [1]   Although the IJ expressed concern over the plausibility
22   of plaintiff's explanation for why she was not suspicious of the
     circumstances following her entry, ultimately he accepted the
23   following testimony as credible: "[T]he respondent testified that
     she had heard that if you paid enough money, the people at the
24   United States Embassy in Armenia would provide legal travel
     documents, and she assumed she just followed the wrong procedure
25   when she first applied for a visa."  (Id. at 11.)

26          [2]   The government concedes that this third ground, which
27   the IJ did sustain, is no longer a bar to plaintiff's adjustment
     of status because she is the beneficiary of an approved visa
28   petition.  (See Defs.' Mot. at 8.)

1   second and third applications, stating to the media that she was

2   ineligible in part because of her false claim to citizenship,

3   contrary to the IJ's previous findings.  (Id. at 6-7; Pl.'s Mot.

4   Ex. 8.)  On February 14, 2011, plaintiff petitioned the district

5   court to enjoin her deportation and order USCIS to grant her

6   adjustment of status.  (FAP at 5.)  The next day, February 15,

7   2011, USCIS denied plaintiff's second and third adjustment of

8   status applications.  (FAP at 7.)  The district court dismissed

9   the case for lack of jurisdiction, and plaintiff appealed.  Id.

10        In Mamigonian I, the Ninth Circuit held that the

11  district court lacked subject matter jurisdiction over the action

12  challenging USCIS's denial of her application for an adjustment

13  of immigration status.  See Mamigonian I, 710 F.3d at 938-40.

14  The Ninth Circuit reached this conclusion "because there had been

15  no final agency action by USCIS on [plaintiff's] pending

16  adjustment-of-status applications at the time she filed her

17  petition."  Id. at 938.  Because USCIS had denied her pending

18  adjustment-of-status applications between the time she initiated

19  that action and the time the Ninth Circuit issued its opinion,

20  the court concluded that "the District Court now has jurisdiction

21  to hear Ms. Mamigonian's claim that USCIS improperly denied her

22  adjustment-of-status application on nondiscretionary grounds."

23  Id. at 946.

24        USCIS based its most recent denial of plaintiff's

25  second adjustment application, filed July 30, 2009, and third

26  adjustment application, filed October 5, 2010, on plaintiff's

27  "preconceived intention to immigrate to the United States."

28  (Pl.'s Mot. Ex. 2 ("USCIS 2011 denial") at 156.)  Plaintiff

1   subsequently brought this action challenging USCIS's denial of

2   her applications for an adjustment of immigration status.

3   (Docket No. 1.)

4           Plaintiff now moves for judgment on the administrative

5   record pursuant to Rule 56.  (Pl.'s Mot. at 1.)  In addition to

6   opposing plaintiff's motion, defendants renew their motion to

7   dismiss for lack of subject matter jurisdiction and, in the

8   alternative, move for summary judgment pursuant to Rule 56.

9   (Defs.' Mot. at 1.)[3]

10  II.  Jurisdiction

11          "[D]istrict courts have jurisdiction to hear cases

12  challenging final agency determinations enumerated in 8 U.S.C. §

13  1252(a)(2)(B)(i) made on nondiscretionary grounds, provided there

14  is no pending removal proceeding in which an alien could apply

15  for such benefits."  Mamigonian I, 710 F.3d at 945.  Section

16  1255, the adjustment-of-status provision, is among those agency

17  determinations enumerated in § 1252(a)(2)(B)(i).

18          Notwithstanding the Ninth Circuit's proclamation that

19  the court now has jurisdiction, defendants previously moved to

20  dismiss this action on the ground that this court lacks subject

21  matter jurisdiction because USCIS's denial of plaintiff's

22  application was a "discretionary" act.  (Docket No. 16.)  The

23

24          [3]    Defendants also appear to move to dismiss for failure
    to state a claim, (see Defs.' Mot. at 6), but it is improper to
25  raise a 12(b)(6) motion in conjunction with their opposition to
    plaintiff's Rule 56 motion.  See Fed. R. Civ. 12(h) ("Failure to
26  state a claim upon which relief can be granted . . . may be
    raised in any pleading allowed or ordered under Rule 7(a); by a
27  motion under Rule 12(c); or at trial).

28

                                    5

1    court denied defendants' motion, holding that "even if USCIS's

2    decision was nominally 'discretionary,'" the court could still

3    determine whether USCIS relied on impermissible factors in

4    denying plaintiff's application.  (Jan. 28, 2014 Order at 6

5    (Docket No. 33).)[4]

6        Defendants now renew their motion to dismiss for lack

7    of subject-matter jurisdiction, arguing that because USCIS's

8    reliance on "preconceived intent" was not barred by collateral

9    estoppel, "the USCIS decision is wholly discretionary in nature."

10   (Defs.' Mot. at 7.)  Defendants' circular reasoning adds nothing

11   to the argument the court previously rejected.  Accordingly, the

12   court will deny defendants' motion to dismiss pursuant to Rule

13   12(b)(1) because the court has jurisdiction to review USCIS's

14   denial of plaintiff's application based on non-discretionary

15   grounds.

16   III. Analysis

17       A. Standard of Review

18       The APA permits a reviewing court to "hold an agency

19   action unlawful and set aside actions, findings, and conclusions

20   found to be arbitrary, capricious, an abuse of discretion, or

21   otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

22   "[T]he ultimate standard of review . . . is a narrow one," such

23   that the reviewing court "is not empowered . . . to substitute

24   _____

25       [4]    In its Order, the court held it "at the very least" had
     jurisdiction to decide whether USCIS was collaterally estopped

26   from finding plaintiff had "preconceived intent."  (Jan. 28, 2014
     Order at 6.)  However, the court's jurisdiction goes beyond the

27   issue of collateral estoppel because it may review agency
     determinations based on nondiscretionary grounds.  See Mamigonian

28   I, 710 F.3d at 945.

                                    6

1  its judgment for that of the agency," but it "must conduct a

2  searching and careful inquiry into the facts."  Nw. Motorcycle

3  Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994)

4  (discussing Motor Vehicle Mfr.'s Ass'n v. State Farm Mutual Ins.

5  Co., 463 U.S. 29, 43 (1983) and  Citizens to Preserve Overton

6  Park v. Volpe, 401 U.S. 402, 416 (1971)).

7       "A motion for summary judgment may be used to review

8  agency administrative decisions within the limitations of the

9  APA."  Yu An v. Napolitano, Civ. No. 5:13-0600 EJD, --- F. Supp.

10  2d ----, 2014 WL 572485, at *3 (N.D. Cal. Feb. 11, 2014).

11  Normally, summary judgment is proper "if the movant shows that

12  there is no genuine dispute as to any material fact and the

13  movant is entitled to judgment as a matter of law."  Fed. R. Civ.

14  P. 56(a).  "However, in an action . . . in which the plaintiff

15  challenges the final decision of an administrative agency, the

16  court does not utilize the standard analysis for determining

17  whether a genuine issue of material fact exists."  Cal. RSA No. 4

18  v. Madera County, 332 F. Supp. 2d 1291, 1301 (E.D. Cal. 2003)

19  (Snyder, J.).  A court conducting judicial review under the APA

20  instead determines "whether or not as a matter of law the

21  evidence in the administrative record permitted the agency to

22  make the decision it did."  Occidental Eng'g Co. v. I.N.S., 753

23  F.2d 766, 769 (9th Cir. 1985) (distinguishing the use of summary

24  judgment in a traditional district court proceeding with the use

25  of summary judgment where the court is reviewing a decision of an

26  administrative agency that conducted its own fact-finding).

27       Generally, when the parties submit cross-motions for

28  summary judgment, the court must consider each motion separately

1  to determine whether either party has met its burden, "giving the
2  nonmoving party in each instance the benefit of all reasonable
3  inferences." ACLU of Nv. v. City of Las Vegas, 333 F.3d 1092,
4  1097 (9th Cir. 2003).  This framework is inapplicable here,
5  because the court is limited to determining whether the
6  administrative record permitted the agency to deny plaintiff's
7  adjustment application.  Therefore, the court will treat
8  defendants' cross-motion for summary judgment as an opposition to
9  plaintiff's motion for judgment on the administrative record.[5]

10       B. Adjustment of Status Under § 1255

11       Section 1255 permits the Attorney General to adjust the
12  status of an alien to that of permanent resident where

> (1) the alien makes an application for such
> adjustment, (2) the alien is eligible to receive an
> immigrant visa and is admissible to the United States
> for permanent resident, and (3) an immigrant visa is
> immediately available to him at the time his
> application is filed.

17  8 U.S.C. § 1255(a).  If these requirements are met, "the burden
18  is always upon the alien to establish that his application for
19  such relief merits favorable consideration." Santos v. I.N.S.,
20  375 F.2d 262, 264 (9th Cir. 1967).  Implicit in this "high burden

---

21       [5]   E.D. Local Rule 230 states "all motions shall be
22  noticed on the motion calendar of the assigned Judge or
    Magistrate Judge."  The court notes that defendants instead
23  raised their Rule 12(b)(1) and summary judgment motions in
    conjunction with their opposition to plaintiff's motion without
24  properly noticing the motions.  Plaintiff did not object to this
    format and responded to defendants' motions in her reply in
25  support of her motion for summary judgment.  The modified summary
    judgment standard applicable in this case, and the court's
26  decision to treat defendants' motions as its opposition, moots
    the issue of whether defendants' failure to follow the local rule
27  precludes the court from considering their motions.

28

1    of proof" is that "[a]n evaluation of all the facts requires due

2    consideration to be given to the presence or absence of special

3    equities."  Von Pervieux v. I.N.S., 572 F.2d 114, 118 (3d Cir.

4    1978) (citations and internal quotation marks omitted).

5              Parties do not dispute that plaintiff has met the three

6    statutory requirements and would thus be eligible for an

7    adjustment.  Plaintiff made an application for adjustment, and

8    the government concedes that plaintiff is a beneficiary of an

9    approved visa petition, (see Defs.' Mot. at 8 n.6), and that a

10   visa is "immediately available" to plaintiff, (see id.).  USCIS's

11   February 15, 2011 denial was not based on plaintiff's statutory

12   ineligibility, but rather her "preconceived intention to

13   immigrate to the United States."  (USCIS 2011 denial at 156.)

14   Plaintiff argues USCIS's denial of the adjustment application,

15   based on the reasons it cited, was impermissible as a matter of

16   law.  (Pl.'s Mot. at 7.)

17        C. Preconceived Intent

18             USCIS's finding of "preconceived intent" was flawed by

19   an erroneous interpretation of the law.  The court may not

20   determine whether USCIS abused its discretion, Martinez-Rosas v.

21   Gonzales, 424 F.3d 926, 930 (9th Cir. 2005), or "reweigh the

22   facts" upon which the agency relied in making its adjustment-of-

23   status determination, Mendez-Castro v. Mukasey, 552 F.3d 975, 980

24   (9th Cir. 2009).[6]  But the court has jurisdiction to review and

25        [6]    Mamigonian I's holding that district courts can review
26   nondiscretionary aspects of agency decisions still does not
     appear to permit district courts to engage in review of the
27   agency record for an abuse of discretion.  See Mamigonian I, 710
     F.3d at 946 (holding that the district court has jurisdiction to
28   review plaintiff's claims that USCIS improperly denied her

1  set aside USCIS's "fact-finding which is flawed by an error of

2  law." Arteaga-De Alvarez v. Holder, 704 F.3d 730, 737 (9th Cir.

3  2012).

4          Preconceived intent is a term of art that evolved from

5  earlier versions of § 1255. "Prior to 1960, entry into the

6  United States with a preconceived intent to remain was a

7  statutory bar to adjustment of status." Choe v. I.N.S., 11 F.3d

8  925, 930 (9th Cir. 1993).  Section 1255 originally provided that

9  eligibility for an adjustment of status was limited to "bona fide

10 nonimmigrants," or, as restated in the same provision, those

11 "aliens who entered the United States in good faith as

12 nonimmigrants." See 8 U.S.C. § 245 (1952) (current version at §

13 1255), Immigration and Nationality Act, Pub. L. No. 85-700, § 1,

14 72 Stat. 699 (1958).[7]

15

16 adjustment-of-status application on nondiscretionary grounds).

17      [7]   The full text of the original version of § 1255(a)
   read: "(a) The status of an alien who was lawfully admitted to
18 the United States as a bona fide nonimmigrant and who is
   continuing to maintain that status may be adjusted by the
19 Attorney General in his discretion (under such regulations as he
   may prescribe to insure the application of this paragraph solely
20 to the cases of aliens who entered the United States in good
   faith as nonimmigrants) to that of an alien lawfully admitted for
21 permanent residence as a quota immigrant or as a nonquota
   immigrant under section 101(a)(27)(A), if (1) the alien makes
22 application for adjustment, (2) the alien is admissible to the
   United States for permanent residence under this Act, (3) a quota
23 or nonquota immigrant visa was immediately available to him at
   the time of his application for adjustment, (4) a quota or
24 nonquota immigrant visa is immediately available to him at the
   time his application is approved, and (5) if claiming a nonquota
25 status under section 101(a)(27)(A) he has been in the United
   States for at least one year prior to acquiring that status. A
26 quota immigrant visa shall be considered immediately available
   for the purposes of this subsection only if the portion of the
27 quota to which the alien is chargeable is undersubscribed by
28

1    Congress amended the statute in 1960, removing

2    preconceived intent as a statutory bar.  Choe, 11 F.3d at 930.

3    Today, "[it] is only one factor to be considered in exercising

4    discretion on an adjustment application."  Id.  An applicant's

5    intention in applying for a nonimmigrant visa is nevertheless an

6    important consideration in the discretionary granting of a status

7    adjustment.  Ameeriar v. I.N.S., 438 F.2d 1028, 1033 n.6 (3d Cir.

8    1971).  "The 1960 Committee Report makes clear that . . . '[i]t

9    [was] intended that only those aliens who enter the United States

10   in good faith and without any intention of circumventing quota

11   restrictions . . . shall be entitled to the benefits of section

12   245(a), as amended."  Id. (quoting S. Rep. No. 86-1651, at 3147

13   (1960)).  Similarly, the purpose of holding an applicant's

14   "preconceived intent" against her today is to avoid granting an

15   adjustment to someone who came to the United States on a

16   temporary nonimmigrant visa, concealing her true intentions to

17   remain in the country and later apply for an adjustment of status

18   to permanent resident.  See Jain v. I.N.S., 612 F.2d 683, 689 (2d

19   Cir. 1979) ("[T]he legislative history of section 245 . . .

20   offers some support for the [] position that the good faith entry

21   of a nonimmigrant is relevant to the favorable exercise of

22   discretion under that provision.")

23   Although "preconceived intent" is no longer a statutory

24   bar, it is narrowly circumscribed.  In fidelity to the

25   legislative history of § 1255, the federal courts and the Board

26

27   applicants registered on a consular waiting list. Any alien who
     shall file an application for adjustment of his status under his
     section shall thereby terminate his nonimmigrant status." 28

28   U.S.C. § 245(a) (1952).

of Immigration Appeals have only applied "preconceived intent" to individuals who come to the United States on a non-immigrant visa concealing an intent to permanently reside there.  Chen v. Foley, 385 F. 2d 929, 935 (9th Cir. 1967) (recognizing the Board of Immigration Appeals has "consistently held that a preconceived intent to establish permanent residence via the nonimmigrant route . . . is a factor to be considered in denying relief under Section 245" and applying the doctrine where there was "doubt as to the bona fides of the respondent's entry as a nonimmigrant visitor for pleasure").[8]  One court's explanation of the reach of "preconceived intent" is particularly helpful:

> It should be remembered that any alien who applies for a nonimmigrant visa must, as required by statute . . . demonstrate to the satisfaction of the American consul in his home country and to the immigration officials upon his arrival in the United States that he fully intends to return to his home country.  Therefore, absent an administrative error, any alien who arrives in the United States with the fixed intention to

---

[8]   See also Choe v. I.N.S., 11 F.3d 925, 933 (9th Cir. 1993) (Alarcon, J., concurring in part and dissenting in part) (noting "preconceived intent" applies where an alien "entered the United States on a 'temporary permission but with a determination to stay here if possible . . . so that his representations to the authorities are false, or fraudulent or misrepresentative'" (quoting Bong Youn Choy v. Barber, 279 F.2d 642, 645 (9th Cir. 1960)); Jain, 612 F.2d at 689 ("[A]llowing the Service the discretion to deny section 245 relief to nonimmigrant aliens who enter in bad faith appears to comport with the proper administration of the statute."); Faddah v. I.N.S., 553 F.2d 491, 495 (5th Cir. 1977) ("[T]he immigration judge found that Faddah was not a bona fide nonimmigrant at the time of entry; in other words, that he obtained a temporary visa intending to find a way to remain permanently in the United States."); Matter of Rubio-Vargas, 11 I.& N. 167, 169 (1965) (holding an adjustment of status should not be used as a "short-cut" to accelerate immigration to this country for a person who came to the United States on a nonimmigrant visa).

12

remain permanently has misrepresented his intention to
the immigration authorities. An applicant who has thus
misled immigration officials in an attempt to
circumvent established procedures presents a weak case
for the favorable exercise of the Attorney General's
discretion. There are many cases where the Attorney
General has refused to exercise favorable discretion
in adjustment proceedings, based on his finding that
the nonimmigrant alien had entered the United States
with the intent to remain permanently (if he could),
by applying for and successfully pursuing adjustment
of status under Section 245.

Ameerier v. I.N.S., 438 F.2d 1028, 1033 n.6 (3d Cir. 1971)

(citing cases). "Preconceived intent" thus requires a certain

gaming of the system--specifically, an individual who uses the

powerful combination of a nonimmigrant visa and an adjustment in

order to circumvent the process of having to apply for an

immigrant visa through a U.S. embassy.  The court could find no

cases in which a court or administrative agency applied

"preconceived intent" to a set of circumstances other than where

a plaintiff, who applied for and came to the United States on a

nonimmigrant visa, willfully misrepresented her intention to

permanently reside in this country in an effort to circumvent the

normal visa-issuing procedure.  See, e.g., Santos v. I.N.S., 375

F.2d 262, 264 (9th Cir. 1967) ("[I]t would have been entirely

proper for the Board to deny relief on the ground that Murillos'

application for a visa to visit the country was made with a

preconceived intention of bypassing normal consulate procedures

for obtaining permanent residence."); Cubillos-Gonzalez v.

I.N.S., 352 F.2d 782, 783-84 (9th Cir. 1965)  (per curium)

(holding there was no abuse of discretion in denying petitioner's

application where in coming to the United States on a

13

1   nonimmigrant visa, petitioner harbored the preconceived intent to

2   remain there permanently); <u>Matter of Tonga</u>, 12 I & N. Dec. 212

3   (1967) (denying adjustment because applicant had preconceived

4   intent to remain in the United States permanently at the time he

5   obtained his nonimmigrant visitor's visa); <u>Matter of Vega</u>, 11 I.

6   & N. Dec. 337 (1965) (denying adjustment to applicant since he

7   sought and gained entry into this country with a preconceived

8   intention to established permanent residence there); <u>Matter of</u>

9   <u>Rubio-Vargas</u>, 11 I. & N. Dec. 167 (1965) (denying adjustment to

10  applicant who in an effort to circumvent normal immigrant visa-

11  issuing process by the United States consul abroad, entered the

12  United States as a nonimmigrant visitor with the preconceived

13  plan of remaining permanently).

14          Thus, as a matter of law, "preconceived intent" cannot

15  apply to plaintiff as a basis for denying her adjustment

16  application.[9]  Plaintiff, who did not use the visitor visa route

17  to come to the United States, and therefore could not have

18  "misrepresented her intentions" in the manner contemplated by

19  law, see <u>id.</u>, is beyond the reach of the doctrine.  Even if

20  "preconceived intent" is a discretionary basis for denying an

21

22          [9]   USCIS found plaintiff had a "preconceived intention to
    immigrate to the United States." (USCIS 2011 denial at 156).  But
23  then it held against plaintiff, as two "very strong negative
    factors," that plaintiff had both an "intent to immigrate" and
24  had "circumvent[ed] normal visa processing."  (<u>Id.</u> at 157.)  Both
    factors are actually elements of preconceived intent.  A mere
25  "intent to immigrate," without an effort to circumvent, is
    insufficient on its own to weigh as a negative factor against
26  granting plaintiff an adjustment.  <u>See</u> <u>Patel</u>, 811 F.2d at 382-83.
    Immigrants who come to the United States--both those who follow
27  the rules and those who do not--arguably have an intent to remain
    here.
28

                                    14

1   adjustment application, USCIS's discretion is constrained by the

2   precedent of the federal courts and the Board of Immigration

3   Appeals.  See Hernandez v. Ashcroft, 345 F.3d 824, 846 (9th Cir.

4   2003) ("[T]he BIA has no discretion to make a decision that is

5   contrary to law."); see also Sang Seup Shin v. I.N.S., 750 F.2d

6   122, 125 (D.C. Cir. 1984) (noting as broad as USCIS's discretion

7   is, "it may not proceed at whim, shedding its grace unevenly from

8   case to case.").

9          That is not to say there are no other grounds available

10  to deny an adjustment to an individual who allegedly attempts to

11  gain entry to this country by "making arrangements that resulted

12  in . . . arriving with [a] fraudulent passport."  (USCIS 2011

13  Denial at 156.)  For instance, USCIS could deny such an applicant

14  an adjustment on the ground that he or she made a false claim to

15  U.S. citizenship or made willful misrepresentations to

16  authorities by presenting a fraudulent passport.  It so happens

17  that, here, the government did bring such charges against

18  plaintiff, based on her arrival in Los Angeles with someone

19  else's passport in her possession, but the IJ, finding plaintiff

20  had not fraudulently claimed citizenship and made no willful

21  representations, dismissed them.[10]

22  _____

        [10]    In Mamigonian I, the Ninth Circuit noted that USCIS's
23  finding of "preconceived intent" appeared to be contrary to the
    IJ's findings in the 2009 removal proceedings.  See Mamigonian I,
24  710 F.3d at 939.  While the court will not address plaintiff's
    collateral estoppel argument, finding the foregoing grounds
25  sufficient for granting plaintiff's motion, the court notes
    USCIS's use of "preconceived intent" as a basis for denying
26  plaintiff's applications for an adjustment is suspect.  On
    December 28, 2010, after the removal proceedings before the IJ,
27  USCIS denied plaintiff's second and third applications, allegedly
    without providing plaintiff any explanation.  (Pl.'s Mot. at 5.)
28

1    Because USCIS's most recent denial of plaintiff's

2    applications for an adjustment of status rested on a

3    misinterpretation of "preconceived intent," the court overturns

4    an agency decision that is "arbitrary" and "capricious" and

5    cannot stand.  See 5 U.S.C. § 706(2)(A).  Accordingly, the court

6    will grant plaintiff's motion for judgment on the administrative

7    record.

8    The court cannot, as the plaintiff requests, order

9    USCIS to grant her application, because such a grant ultimately

10   lies within the discretion of the agency.  See Norton v. S. Utah

11   Wilderness Alliance, 542 U.S. 55, 63 (2004) ("[T]he only agency

12   action that can be compelled under the APA is action legally

13   required.")  The court will therefore remand this case to USCIS.

14   Despite the "amount of resources that have already been expended

15   on this case by the federal courts," Mamigonian I, 710 F.3d at

16   946, although hopefully unlikely, it is imaginable that upon

17   remand, USCIS will find yet another reason to deny plaintiff's

18   application, and the parties may return to district court in due

19   time.

20   IT IS THEREFORE ORDERED that plaintiff's motion for

21   summary judgment be, and the same hereby is, GRANTED; the

22   February 15, 2011 denial of plaintiff's adjustment application

23

24   However, on that same day, the government issued a public
     statement in response to complaints about their handling of the
25   case, stating, "When [Mamigonian] arrived in the United States in
     2002, she had no legal basis to enter the country.  In an effort
26   to gain admission, she presented officers with a passport
     belonging to someone else and falsely claimed to be a U.S.
27   citizen."  (Pl.'s Mot. Ex. 8 at 370.)  This statement suggests
     the February 15, 2011 denial of plaintiff's application based on
28   "preconceived intent" was disingenuous.

16

1 | be, and the same hereby is, set aside as unlawful pursuant to 5
2 | U.S.C. § 706(2)(A); and in a manner consistent with this Order,
3 | defendants shall fully and fairly adjudicate plaintiff's 2009 and
4 | 2010 Form I-485 applications to adjust status to permanent
5 | resident within 60 days from the date on which this Order is
6 | signed.
7 | Dated:  October 23, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

17